UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GUADALUPE JIMENEZ NAVA, as mother
and natural guardian of C.V.,

                Docket No.: 25-cv-6500

                Plaintiff,
    -against-

                **COMPLAINT**

THE CITY OF NEW YORK ,
NYPD OFFICER ASAD ULLAH, individually,
and NYPD OFFICER "JOHN DOE",
(fictitiously named), individually,

                **JURY TRIAL DEMANDED**

                Defendants.
-----------------------------------------------------------X

      Plaintiff, GUADALUPE JIMENEZ NAVA ("Plaintiff") as mother and natural guardian of C.V. ("C.V."), by her attorneys, HARFENIST KRAUT & PERLSTEIN, LLP, as and for a complaint, allege as follows:

### NATURE OF THE ACTION

      1.    This is an action seeking recovery for deprivation of C.V.'s civil rights guaranteed to him under the Fourth and Fourteenth Amendments to the United States Constitution committed by Officer Asad Ullah ("Ullah"), Officer John Doe, and The City of New York ("City") (collectively, the "Defendants").

      2.    Additionally, this action seeks recovery under New York Law for false arrest and excessive forced.

      3.    The Plaintiff bases this action upon the illegal seizure brazen beating, C.V. suffered by the Defendants and other members of the New York City Police

1

Department ("NYPD") on August 31, 2024, when C.V. was wrongfully apprehended.

## JURISDICTION

4. Jurisdiction is proper in this Court pursuant to 28 USC §1331, 28 USC §1343 and 42 USC §1983 in that the actions taken by the municipal defendants violated C.V.'s civil rights.

5. Additionally, this Court may exercise supplemental jurisdiction pursuant to 28 USC §1376(a) for the state law claims asserted against the Defendants because the claims arise from the same set of facts and is inextricably intertwined with the federal claims.

## VENUE

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) since the incident occurred in Brooklyn, New York which is located in the Eastern District of New York.

## PARTIES

7. Plaintiff and C.V. are both residents of the State of New York, residing in the County of Queens.

8. Ullah who is being sued in his individual capacity, is a Police Officer employed by the NYPD. Upon information and belief, at all relevant times described

herein, Ullah was acting under color of state law within the scope of his employment with the NYPD.

9. "John Doe" who is being sued in their individual capacity, is a Police Officer employed by the NYPD. Upon information and belief, at all relevant times described herein, John Doe was acting under color of state law within the scope of their employment with the NYPD.

10. The City is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

## STATEMENT OF FACTS

11. On the evening of August 31, 2024, at approximately 9 PM, C.V. was riding a scooter with his friend around Park Avenue in Brooklyn, NY near Woodhull hospital.

12. While riding the scooter, C.V. and his friend stopped on the side of the road to check one of the tires on the scooter.

13. Without warning, a black vehicle suddenly swerved towards the side of the road where C.V. was checking the scooter tire with his friend and stopped directly in front of C.V.'s scooter on the side of the road in a manner designed to block C.V.'s path of travel.

14. C.V. did not know the occupants of the vehicle and was caught off guard by the abrupt and aggressive maneuver.

15. Immediately after the vehicle came to a stop, two individuals jumped out and rushed toward C.V and his friend. Neither individual displayed any form of identification or badge before approaching C.V.

16. After exiting the vehicle, the two individuals rapidly advanced toward C.V. in an aggressive and threatening manner.

17. Without identifying themselves or providing any lawful basis for their actions, one of the individuals lunged toward C.V. and attempted to seize him by grabbing his arm.

18. The individual instead grabbed hold of C.V.'s sweatshirt, but C.V. was able to pull away and escape from the attempted physical restraint.

19. At no point prior to this attempted seizure did either individual inform C.V. that they were law enforcement officers, nor did they display any badges, insignia, or identifying markings.

20. Believing that the individuals intended to rob or physically harm him, and fearing for his life, C.V. fled from the black vehicle and the two individuals that came out of it.

21. C.V.'s decision to flee was reasonable under the circumstances, as any person in his position would have understood such conduct as a threat to their safety.

22. C.V. did not wait for the individuals to identify themselves because, at that moment, their conduct gave every appearance of a hostile attack.

23. C.V. fled and scaled a fence into the Sumner Houses off of Park Avenue across the street from Woodull Hospital. While fleeing, C.V. heard one of the individuals yell, "you're fucked, I'm gonna tase you" as the individual was pursuing him from behind.

24. C.V. eventually got out of eyesight of the individuals from the black vehicle who were pursuing him and, while hiding near the Sumner Houses, called for an Uber to take him home.

25. Once the Uber ride arrived, C.V. walking towards the Uber when he heard someone yell, "that's him!" to which he began to flee again.

26. He saw an ambulance nearby which he was able to get underneath and hide until he was eventually spotted and ordered to come out from underneath the ambulance.

27. As soon as C.V. came out from underneath the ambulance, he was tased by an officer despite not posing any real threat or imminent danger to the officers or others.

28. Following the tasing, Defendants violently assaulted Plaintiff by striking him, slamming him to the ground, and forcefully placing him in handcuffs.

29. The use of such force was excessive, unreasonable, and unnecessary under the circumstances, particularly given that Plaintiff was an unarmed 16-year old and posed no threat to the safety of the officers or others.

30. As a direct result of being tased, beaten, and slammed to the ground, C.V. sustained injuries to his head and face, including bleeding from his head, visible wounds caused by the taser prongs, and multiple scrapes, cuts, and bruises across his body.

31. C.V. was transported directly to Woodhull Hospital for emergency medical treatment.

32. Upon arrival at the hospital, C.V. was handcuffed to his bed.

33. While C.V. was restrained and receiving treatment, Defendant Ullah was stationed in his room to monitor him. During this time, Ullah callously remarked to C.V. that he was "lucky he didn't shoot him."

34. At approximately 3:00 a.m. on September 1, 2024, C.V.'s handcuffs were finally removed, and the monitoring officer informed C.V. that he was no longer in custody because he had been wrongfully identified.

35. As a result of Defendants' unlawful conduct, C.V. suffered severe physical pain and bodily injuries, including head trauma, facial bleeding, puncture wounds from the taser, and numerous cuts, scrapes, and bruises.

36. C.V. continues to experience residual pain, discomfort, and emotional distress stemming from the assault, tasering, and wrongful detention.

37. C.V. also endured humiliation and mental anguish from being violently attacked, handcuffed, and publicly treated as a criminal, despite having committed no crime and ultimately being wrongfully identified.

38. The conduct of Defendants, as described herein, deprived C.V. of rights guaranteed under the Constitution of the United States, including the right to be free from unreasonable seizure and excessive force under the Fourth Amendment, and the right to due process of law under the Fourteenth Amendment.

39. Plaintiff sustained damages, including physical injury, emotional distress, pain and suffering, medical expenses, and the violation of his constitutional rights, for which Defendants are liable pursuant to 42 U.S.C. § 1983.

40. On November 20, 2024, a Notice of Claim was served on the City of New York, pursuant to General Municipal Law §50-e.

41. On March 28, 2025, a hearing on the claim was conducted pursuant to General Municipal Law §50-h.

42. Although more than thirty (30) days have elapsed since the service of the Notice of Claim, the City of New York has failed to adjust the claim.

**AS AND FOR A FIRST CAUSE OF ACTION**
**EXCESSIVE FORCE IN VIOLATION OF PLAINTIFF'S**
**FOURTH AMENDMENT RIGHTS**

43. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

44. The conduct of Defendants, including tasing, striking, slamming C.V. to the ground, and handcuffing him without justification, constituted the use of excessive force in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

45. At all times relevant herein, C.V. was unarmed, posed no threat to Defendants or others, and was not engaged in any criminal conduct that would justify the level of force used.

46. As a direct and proximate result of Defendants' actions, C.V. suffered physical injuries, pain and suffering, emotional distress, and a deprivation of his constitutional rights.

### AS AND FOR A SECOND CAUSE OF ACTION
### UNLAWFUL SEIZURE IN VIOLATION OF PLAINTIFF'S
### FOURTH AMENDMENT RIGHTS

47. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

48. Defendants unlawfully seized C.V. when they abruptly cut off his scooter, attempted to physically grab him without identifying themselves, tased him, and placed him in handcuffs without probable cause or reasonable suspicion.

49. Such actions deprived C.V. of his right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

50. As a direct and proximate result of Defendants' conduct, C.V. sustained physical injury, emotional harm, and the loss of his constitutional rights.

## AS AND FOR A THIRD CAUSE OF ACTION
## FALSE ARREST UNDER NEW YORK STATE LAW

51. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

52. Defendants intentionally confined C.V. without his consent and without lawful justification when they cut off his scooter, attempted to seize him, tased him, handcuffed him, and restrained him at the hospital.

53. Said confinement was not privileged, as C.V. was wrongfully identified and no probable cause existed for his arrest or detention.

54. As a direct and proximate result of Defendants' conduct, C.V. suffered physical injury, emotional distress, humiliation, and loss of liberty.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs respectfully demand the following relief:

a. For compensatory damages against all defendants in an amount to be proved at trial, but no less than SIX MILLION DOLLARS ($6,000,000.00).

b. For exemplary and punitive damages against all defendants in an amount to be proved at trial.

c. For attorneys fees pursuant to 42 U.S.C. §1988 against all defendants.

    d.    For such other and further relief as this Court may deem just and proper.

Dated: Lake Success, New York
       November 21, 2025

        Respectfully submitted,
        HARFENIST KRAUT & PERLSTEIN, LLP

By:   *Steven J. Harfenist*
        Steven J. Harfenist
        *Attorneys for Plaintiff*
        3000 Marcus Avenue, Suite 2E1
        Lake Success, New York 11042
        T: (516) 355-9600
        F: (516) 355-9601
        E: SHarfenist@hkplaw.com